1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOLLINS,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBERT WILKIE, Secretary,<br>Department of Veterans Affairs,<br><br>          Defendant. | Case No. 19-cv-2201 DMS (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendant's motion for summary judgment. Plaintiff Brian Hollins filed a response in opposition to the motion, and Defendant filed a reply.  For the reasons set forth below, Defendant's motion is granted.

## I.

## BACKGROUND

On January 8, 2018, the San Diego Veterans Affairs ("VA") Healthcare System hired Plaintiff as the Bar Code Medication Administration Coordinator and Clinical Nurse Informatics, Registered Nurse III Grade.   (Deposition of Brian Hollins ["Pl. Depo."] 62:12–17, 77:18–21, Ex. 1 to Defendant's Notice of Lodgment ["Def. NOL"]; Decl. of Carmen Concepcion ["Concepcion Decl."] ¶ 5.)

/ / /

/ / /

On July 31, 2018, Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor at the VA.  (Pl. Depo. 127: 20–25; 143:24–144:2; Complaint of Employment Discrimination ["EEO Complaint"], Ex. 20 to Def. NOL.)   On September 7, 2018, Plaintiff filed a formal EEO complaint alleging harassment, retaliation, and the creation of a hostile work environment based on race, sex, and disability.  (Pl. Depo. 144:3–6; EEO Complaint.)  He amended the complaint on November 1, 2018 and December 11, 2018.   (Notice of Partial Acceptance and Amendment of the EEO Complaint for Brian Hollins ["Notice of Partial Acceptance"], Ex. 21 to Def. NOL.)  On December 28, 2018, the VA's Office of Resolution Management accepted some of Plaintiff's claims for investigation but dismissed others.   (Notice of Partial Acceptance.)   Plaintiff did not appeal the dismissal of those claims.  On August 19, 2019, the VA's Office of Employment Discrimination Complaint Adjudication issued a final agency decision determining that Plaintiff failed to prove any of his claims against the VA.  (Final Agency Decision, Ex. 23 to Def. NOL.)

Plaintiff resigned his employment with the San Diego VA Healthcare System effective November 24, 2018.  (Notification of Personnel Action, Ex. 19 to Def. NOL.)

On November 19, 2019, Plaintiff brought the instant lawsuit against the VA.  (*See* ECF No. 1.)  He filed an amended complaint on March 19, 2019 alleging seven causes of action: (1) disability discrimination in violation of the Rehabilitation Act, (2) hostile work environment and reprisal in violation of the Rehabilitation Act, (3) failure to accommodate in violation of the Rehabilitation Act, (4) hostile work environment based on race, sex, and reprisal in violation of Title VII of the Civil Rights Act, (5) reprisal in violation of the Rehabilitation Act, (6) reprisal in violation of Title VII, and (7) discrimination under a disparate treatment theory based on race and sex in violation of Title VII.  (*See* ECF No. 8.)

/ / /

## II.

## LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp*., 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id*.; *see also Butler v. San Diego Dist. Atty's Off*., 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

Further, in assessing a party's motion for summary judgment, a "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist*.,

237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3) (district court "need only consider only the cited materials"); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (district courts are "not required to comb the record to find some reason to deny a motion for summary judgment"). Rather, it is the obligation of each party to cite to "particular parts of materials in the record" or otherwise show that "the materials cited do not establish the absence or presence of a genuine dispute" in their briefing. Fed. R. Civ. P. 56(c)(1).

## III.

## DISCUSSION

### A.    Exhaustion of Administrative Remedies

As a threshold matter, Plaintiff alleges that Defendant engaged in discrimination and retaliation, and fostered a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964.  To bring a Title VII claim before a district court, a plaintiff must first exhaust his administrative remedies.  *See* 42 U.S.C. § 2000e–16(c); *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002) (citing *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995)).

Exhaustion of administrative remedies requires that the plaintiff "file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (citing 42 U.S.C. § 2000e–5(b)).  Specifically, the plaintiff "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter"  and  "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." *Id.* at 1104 (citing 29 C.F.R. § 1614.105(a)).  Failure to comply with the 45-day requirement is fatal to a plaintiff's discrimination claim.  *Id.*  If a plaintiff is unable to informally resolve the issue, he may file a formal complaint with the agency.  29 C.F.R. § 1614.106.  The agency is then "required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the

1    complaint unless the parties agree in writing to extend the time period."  29 C.F.R.
2    § 1614.106(e)(2).
3        Additionally, the "jurisdictional scope" of the plaintiff's claims before a
4    district court depends on the scope of the EEOC charge and investigation.  *Leong v.*
5    *Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted).  A court may not
6    consider incidents of discrimination that are not included in an EEOC charge, unless
7    they are "like or reasonably related to the allegations made before the EEOC, as well
8    as … within the scope of an EEOC investigation that reasonably could be expected
9    to grow out of the allegations."  *Lyons*, 307 F.3d at 1104 (citing *Green v. Los Angeles*
10   *Cty. Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989); *Leong*, 347
11   F.3d at 1122 (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).
12   However, even if the incidents are "related to acts" alleged in timely filed charges,
13   they are not actionable if time-barred.  *Lyons*, 307 F.3d at 1105–06  ("[D]iscrete
14   discriminatory acts [such as failure to promote] are not actionable if time barred,
15   even when they are related to acts alleged in timely filed charges").
16       Here, Plaintiff's initial contact with an EEOC counselor was on July 31, 2018.
17   (Pl. Depo. 127:20–25, 143:24–144:2; EEO Complaint; Notice of Partial
18   Acceptance.)  Defendant therefore requests the Court to summarily dismiss all of
19   Plaintiff's claims arising from events alleged to have taken place before June 16,
20   2018—45 days prior to Plaintiff's first contact with the EEOC—on grounds that
21   Plaintiff failed to exhaust his administrative remedies.  (ECF No. 27, at 17–18.)
22   Defendant also asks the court to dismiss all Plaintiff's claims that were not raised
23   with an EEO counselor within 45 days of their occurrence, but were instead raised
24   for the first time when Plaintiff sought to amend his EEO complaint.  (*Id.* at 18.)
25   Plaintiff does not dispute Defendant's argument on this issue.  (*See generally* ECF
26   No. 28.)  Accordingly, the Court dismisses Plaintiff's Title VII claims pertaining to
27   events from prior to June 16, 2018 for failure to exhaust his administrative remedies.
28   / / /

– 5 –

1   **B.    Title VII Discrimination Claim**

2   Title VII provides that "[i]t shall be an unlawful employment practice for an

3   employer to fail or refuse to hire or to discharge any individual, or otherwise to

4   discriminate against any individual with respect to his compensation, terms,

5   conditions, or privileges of employment, because of such individual's race, color,

6   religion, sex, or national origin."   42 U.S.C. § 2000e–2(a)(1); *Lyons*, 307 F.3d at

7   1103.  The parties agree that this case is governed by the burden-shifting framework

8   established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

9   Under this framework, a plaintiff must first establish a prima facie case of

10  discrimination by showing that: "(1) he belongs to a protected class; (2) he was

11  qualified for the position; (3) he was subject to an adverse employment action; and

12  (4) similarly situated individuals outside his protected class were treated more

13  favorably."  *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123

14  (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

15  If the plaintiff makes the requisite prima facie showing, the burden shifts to

16  the employer to articulate some "legitimate, nondiscriminatory reason for the

17  challenged action."  *Id.* at 1123–24 (citing *McDonnell Douglas*, 411 U.S. at 802).  If

18  the employer meets the burden, the plaintiff must show that the articulated reason is

19  pretextual either "(1) indirectly, by showing that the employer's proffered

20  explanation is 'unworthy of credence' because it is internally inconsistent or

21  otherwise not believable, or (2) directly, by showing that unlawful discrimination

22  more likely motivated the employer."   *Id.* at 1123–24 (citing *Godwin v. Hunt*

23  *Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).

24  Plaintiff alleges that Defendant discriminated against him based on his race

25  by "moving him from a suitable office, calling the police due to his missing chair,

26  and marking him AWOL when he clearly should not have been."[1]   (ECF No. 28, at

27

28  _____

[1] Plaintiff withdraws his sex discrimination claim.  (ECF No. 28, at 3–4.)  Defendant
argues that the Court should dismiss this claim.  (ECF No. 29, at 5.)  As Defendant

4.)   There is no dispute that Plaintiff is a member of a protected class as an African-American.   *See McDonnell Douglas*, 411 U.S. at 802 (racial minorities are a protected class).   Assuming without deciding that Plaintiff is able to make out a prima facie case of discrimination, the Court will analyze *first*, whether Defendant has shown that it had a legitimate, nondiscriminatory reason for its actions, and *second*, whether Plaintiff has shown that Defendant's reasons were pretextual.

To frame the issues, Defendant offers the fact that Plaintiff's direct supervisor, Carmen Concepcion, hired him as evidence against her alleged bias.   (ECF No. 27, at 16–17.)   Defendant further argues that VA Health Systems Specialist Shaun Wilkins' participation in the hiring process creates an inference of non-bias against Plaintiff.   (*Id.*)   Indeed, the Ninth Circuit has enunciated a 'same-actor rule,' which dictates that "an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs."   *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)).   District courts must consider this "strong inference" against employer bias when evaluating a Title VII discrimination claim on a summary judgment motion. *Id.* at 1098.   If the inference applies, then the plaintiff prevails only if he makes the "extraordinarily strong showing of discrimination" to rebut the inference.   *Id.* at 1097.   However, this inference only applies where a plaintiff's hiring and adverse employment action both "occur within a short period of time." *Bradley*, 104 F.3d at 270–71.   Here, Ms. Concepcion and Mr. Wilkins—the two people Plaintiff claims discriminated against him—were both involved in Plaintiff's hiring less than one year before each instance of alleged discriminatory conduct.   (Pl. Depo. 120:24–121:8;  EEO Affidavit, ¶¶ 13–14, 17–18, 20–21, 24–25;  Wilkins Decl. ¶ 4.) Therefore, Plaintiff must put forward "extraordinarily strong" evidence of

---

does not oppose dismissal, the Court construes Plaintiff's withdrawal as a request for voluntary dismissal and dismisses the claim.

discrimination to overcome the inference that Defendant's actions were not the result of bias.[2]

The Court will evaluate each contested instance of alleged discrimination in turn. In each instance, even if Plaintiff were able to establish a prima facie case of racial discrimination for these actions, Defendant has advanced a legitimate and non-discriminatory reason for its actions. Plaintiff is unable to show that any of Defendant's offered reasons were pretextual, and therefore his discrimination claims fail.

### 1.    Plaintiff's Office

Plaintiff claims that Defendant discriminated against him when Ms. Concepcion "denied his request to be reassigned to a quieter office space, revoked his use of a suitable sized work station in the Administration Office space, and denied Complainant use for the 'sit-stand' desk he had been using as an accommodation." (ECF No. 8, at 4, 12–13.)

Prior to the events forming the basis for Plaintiff's race discrimination claim, Plaintiff shared offices with Nurse Informaticist Margaret Guth. (Pl. Depo. 63:17–19, 174:19–175:1; Concepcion Decl. ¶ 12.) In July 2018, Plaintiff moved offices of his own accord due to a vibration sound in his assigned office space. (Pl. Depo. 211:2–9; Declaration of Shaun Wilkins ["Wilkins Decl."] ¶ 14–15; *see also* ECF No. 28, at 2.) The unoccupied, private office into which Plaintiff moved lacked any ergonomic equipment, but contained a single desk, which was larger than the desk in Plaintiff's shared office. (Pl. Depo. 212:6–11; Wilkins Decl. ¶ 14.) After Plaintiff informed Shaun Wilkins of the vibration issue, a work order was placed, and engineers determined the noise was coming from the floor below the shared office. (Wilkins Decl. ¶ 16.) The engineers recommended that the occupants of the shared

---

[2] Plaintiff does not contest Defendant's assertion that the same-actor rule applies in this case. (ECF No. 28, at 4–5.) Rather, he argues that "there is evidence in this case to overcome this strong presumption." (*Id.* at 5.)

office relocate until contractors could resolve the issue.  (Wilkins Decl. ¶ 17; Concepcion Decl. ¶ 42.)  At this point, Wilkins conferred with Carmen Concepcion and recommended that both Plaintiff and Ms. Guth be assigned to new temporary offices.  (Wilkins Decl. ¶ 18; Concepcion Decl. ¶ 42.)  Wilkins explained that Guth's temporary placement would be in the private office because her work duties were such that she spent more time at her desk and on phone calls than did Plaintiff.  (Wilkins Decl. ¶ 18, 20; Concepcion Decl. ¶ 42; Pl. Depo. 213:7–10.)  Plaintiff was temporarily assigned to a three-person shared office because he tended to spend more time away from his desk conducting his duties, and because the shared office, unlike the private office, contained a sit-stand desk that could accommodate Plaintiff's ergonomic needs.  (Wilkins Decl. ¶¶ 18, 20; Concepcion Decl. ¶ 42; Pl. Depo.  212:17–25,  213:1–5,  213:11–18.)    Before engineering made its recommendation, Wilkins told Plaintiff that he could not move into the three-person office because he the VA was likely to fill the vacant seat with a third Program Support Assistant, and because the foot traffic would be distracting. (Wilkins Decl. ¶ 9.)  Wilkins informed Plaintiff and Guth about these temporary assignments on July 24, 2018.  (Wilkins Decl. ¶ 20; Pl. Depo. 212:23–25, 213:1–6.)  On August 6, 2018, Wilkins emailed both Plaintiff and Guth again to inform them that the vibration issue was fixed and that they could both move back to their primary office. (Wilkins Decl. ¶ 22; Pl. Depo. 217:11–20, 227:15–22; Relocation Email, Ex. 10 to NOL.)

Defendant argues that it is entitled to summary judgment as to these claims, because it had legitimate, non-discriminatory reasons for its actions.  Indeed, the record reflects that the VA had race-neutral reasons for its actions. As an initial matter, Plaintiff acknowledges that he initially moved out of his assigned office and into the private office of his own accord due to the vibration sound that had developed in his shared office.[3]  (See ECF No. 28, at 5.)  He was not forced to do so

_____

[3] Plaintiff argues that this is a disputed fact. (ECF No. 28, at 2.) However, Defendant

by any of his managers.  Furthermore, Mr. Wilkins stated that Plaintiff's subsequent relocation had three bases: (1) the recommendation from engineering that Plaintiff's original office be vacated until contractors could fix the vibration issue, (2) the different natures of Plaintiff's and Ms. Guth's respective job duties, and (3) the fact that the three-person office to which Plaintiff was eventually moved contained ergonomic equipment that could accommodate Plaintiff's ergonomic needs while the private office did not contain any such equipment.  The Court agrees that Defendant has advanced legitimate and nondiscriminatory reasons for moving Plaintiff from the private office to the three-person office while the contractors addressed the issues causing the vibration noise in his original office.

Under the *McDonnell Douglas* scheme, this shifts the burden to Plaintiff to present evidence rebutting Defendant's proffered reasons for the office move.  First, Plaintiff argues that Defendant's reasoning is internally inconsistent because Wilkins initially told Plaintiff that the three-person office would be too distracting for his use before changing course and moving him into the shared office so that a white colleague could use the private office.  (ECF No. 28, at 5.)  Second, Plaintiff offers the testimony of VA employee Vivian Jackson as "disputed facts" to show the VA's offered reasons for the office moves are pretextual. (*Id.* at 2–3, 5.)

As a preliminary matter, the Court must begin its analysis with the strong inference that Wilkins' actions were non-discriminatory, and that Plaintiff can only overcome that inference by presenting extremely strong evidence of discrimination. *Coghlan*, 413 F.3d at 1097–98.

First, Wilkins' change of course on office assignments does not rebut the inference of non-discrimination.  When the plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial" to defeat the employer's motion for summary judgment in cases where the same-actor rule applies.  *Id.* at 1096 (citation omitted).  Viewing this evidence in the light most favorable to

does not dispute it. (*See* ECF No. 27, at 18; *see also* ECF No. 29, at 2.)

Plaintiff, it does not overcome the strong inference of non-discrimination.  It does not contradict Defendant's reasons for assigning Plaintiff to the shared office while the vibration issue was being remedied.  Rather, it simply reflects the fact that as circumstances changed—initially one employee requested to use a different office, then two employees with different duties needed to use different offices—outcomes also changed.

Second, Ms. Jackson's testimony is neither disputed nor material.  Nor does it provide any evidence that Defendant's stated reasons for moving Plaintiff were pretextual.  Ms. Jackson testified that Wilkins treated Plaintiff differently from other employees by moving Ms. Guth into the private office being used by Plaintiff.[4] (Deposition of Vivian Jackson ["Jackson Depo."] 31:7–32:6, Ex. A to Plaintiff's Notice of Lodgment.)  But this testimony fails to provide even indirect evidence of discriminatory motive, as it is inconsistent with Defendant's stated reason of assigning different office placements based on job duties.  Defendant does not dispute that Plaintiff was treated differently from Ms. Guth with respect to temporary office assignments; however, Defendant provides a non-discriminatory reason for that disparate treatment.

Because Plaintiff has failed to present a triable issue of fact that rebuts Defendant's non-discriminatory reason for Plaintiff's office assignments, the Court grants summary judgment on this claim in favor of Defendant.

/ / /

---

[4] Plaintiff also puts forward Ms. Jackson's testimony, that she transferred out of the nursing division because she felt that she was being treated unfairly by Mr. Wilkins because of her race, as evidence that the VA discriminated against Plaintiff.  (ECF No. 28, at 2, 5–6 (citing Jackson Depo. 40:2–7, 41:6–15).)  But this testimony, even viewed in the light most favorable to Plaintiff, does not show that Mr. Wilkins' non-discriminatory reasons were pretextual. The testimony relates to Mr. Wilkins' treatment of Ms. Jackson, not Plaintiff.  Further, the testimony is speculative as to Mr. Wilkins' motivations and imputes racial motive without providing any evidence in support of that assertion.

### 2.   Police Report

Plaintiff's Amended Complaint also alleges that Defendant discriminated against him on the basis of race when "[m]anagement accused Complainant of stealing an ergonomic office chair that management had issued him."[5]  (ECF No. 8, at 4, 12–13.)

The record reflects that while Plaintiff was on medical leave of absence from the VA, Mr. Wilkins reported to the police that Plaintiff's ergonomic office chair was missing from his office.  (Wilkins Decl. ¶¶ 23–24; Pl. Depo. 235:7–19.)  Wilkins claims that he reported the missing chair to the VA police after he received a report from another employee that the chair was missing, and he did so because he wanted to find or replace the chair before Plaintiff returned from leave.  (Wilkins Decl. ¶¶ 23, 26; Pl. Depo. 240:13–241:16.)  Mr. Wilkins states that he did not accuse Plaintiff of stealing the chair, and that he explicitly told the investigating officer that he was not accusing Plaintiff or any other VA employee of theft.  (*Id.*)  However, Plaintiff testified that in making the police report, Mr. Wilkins accused Plaintiff of stealing the office chair.  (Pl. Depo. 235:7–20, 239:22–240:4.)  The investigation revealed that Plaintiff had moved the chair to a different office before taking leave to keep his officemate from using it while he was on leave.  (Wilkins Decl. ¶¶ 24, 27; Pl. Depo. 238:12–241:16.)  The investigation was closed after it was determined that the chair had simply been moved to a different office and Plaintiff faced no disciplinary action resulting from these events.  (Wilkins Decl. ¶ 27; Pl. Depo. 240:8–241:16.)  The record is undisputed that Mr. Wilkins did not contact Plaintiff before making his police report.  (Wilkins Decl. ¶ 25; Pl. Depo. 237:13–23, 240:8–24.)

---

[5] Plaintiff also claims that Wilkens "made negative comments about him in terms of [Plaintiff] not being a 'good candidate' for jobs he applied for."  (ECF No. 8, at 4.)  However, the record, including Plaintiff's own testimony, lacks any evidence showing that Mr. Wilkins ever made any comments about Plaintiff being a poor candidate for other jobs.  (Pl. Depo. 241:17–242:4; *see also* Wilkins Decl. ¶ 28.)  The Court therefore grants Defendant summary judgment on this claim.

Defendant argues that it met its burden of showing it had legitimate reasons for its actions here because the undisputed record shows Mr. Wilkins filed the police report after he received the employee report concerning the missing chair and was motivated to locate the chair before Plaintiff returned from leave. (ECF No. 29, at 7.) Wilkins also explained that he did not contact Plaintiff about the missing chair because he was not Plaintiff's direct supervisor and believed it to be inappropriate to contact him while he was on medical leave. (Wilkins Decl. ¶ 25.) The Court agrees that Defendant has set forth non-discriminatory reasons for its actions.

Plaintiff argues that these reasons are pretextual: "Instead of calling Mr. Hollins and asking about the chair, Mr. Wilkins called the VA police and reported that Mr. Hollins stole the chair." (ECF No. 28, at 3.) Yet, there are only two disputed facts regarding the chair incident: (1) whether Mr. Wilkins accused Plaintiff of stealing his chair in the report (*compare* Pl. Depo. 235:7–20, 239:22–240:4 and Jackson Depo. 32:16–24, *with* Wilkins Decl. ¶ 26) and (2) whether Mr. Wilkins called the police on his own initiative or at the direction of Ms. Concepcion. (*Compare* Pl. Depo. 235:18–236:14, *with* Concepcion Decl. ¶ 46.) However, neither of these disputed facts is material because they do not address whether Mr. Wilkins' stated reasons for calling the police were pretextual. The undisputed stated reason for filing the police report was that the chair was reported missing by another VA employee. As such, construing the facts in the light most favorable to the non-moving party, Plaintiff is unable to rebut the strong inference of non-discrimination to which Wilkins and Concepcion are entitled. Defendant is therefore entitled to summary judgment on this issue.

### 3. AWOL Designation

Plaintiff claims that Defendant engaged in unlawful race discrimination when "[m]anagement denied Complainant's request for sick leave and charged him 4.5 hours of absent without leave ('AWOL')." (ECF No. 8, at 5, 12–13.)

/ / /

Carmen Concepcion informed Plaintiff on multiple occasions that when he needed leave from work, he was required to request leave through her. (Concepcion Decl. ¶ 49.) On October 1, 2018, Plaintiff left work for sick leave without asking Ms. Concepcion. (Concepcion Decl. ¶ 49; Pl. Depo. 244:2–25, 245:1–25, 246:2–13.) Plaintiff's testimony indicates that he instead asked former Deputy Nurse Executive Kathryn Schreiber for leave because Ms. Concepcion was not in her office. (Pl. Depo. 244:2–25, 245:1–25, 246:2–13.) Plaintiff did not attempt to email or call Ms. Concepcion. (Pl. Depo. 245:5–22.) Mr. Wilkins is responsible for timekeeping and attendance and he does not approve or deny leave requests without direction from an employee's supervisor. (Wilkins Decl. ¶ 29; EEO Affidavit ¶ 10, Ex. 16 to Def. NOL; Pl. Depo. 223:10–16, 235:23–25, 236:10–25.) As such, Ms. Concepcion instructed Mr. Wilkins to mark Plaintiff as AWOL for that day, which he did. (Concepcion Decl. ¶ 49; Wilkins Decl. ¶ 30.) However, after Ms. Concepcion learned that Ms. Schreiber had approved Plaintiff's leave request, she instructed Mr. Wilkins to convert the AWOL time to sick leave. (Concepcion Decl. ¶ 49; Wilkins Decl. ¶ 31.)

Defendant argues that Mr. Wilkins had legitimate, non-discriminatory reasons for marking Plaintiff as AWOL. (ECF No. 29, at 7–9.) Defendant explains the reasoning behind its actions as follows: "Ms. Concepcion had previously informed Plaintiff on several occasions that he needed to request leave through her, and on the day in question, Plaintiff did not notify her by phone, email, or in person of the need to take time off, so she instructed Mr. Wilkins to mark Plaintiff as AWOL." (*Id.* at 8 (citing Concepcion Decl. ¶ 49; Pl. Depo. 245:5–22; Wilkins Decl. ¶ 30).) This is a legitimate race-neutral reason for such an action.

Plaintiff argues that Ms. Jackson's testimony that the way Wilkins handled the issue was "odd because he had a doctor's note" creates a triable issue of fact.[6]

---

[6] The record indicates Plaintiff did not have a doctor's note on the date in question. As Defendant explains, "It is undisputed that the AWOL charge in question occurred

– 14 –

1    (ECF No. 28, at 6; Jackson Depo. 29:13–14.)  Even accepting this as true, it does

2    not negate the fact that the undisputed record shows that Plaintiff left work without

3    following protocol for taking sick time.  Based on the evidence in the record,

4    Plaintiff fails to overcome the strong inference that Wilkins and Concepcion—the

5    two people who hired Plaintiff less than a year prior to these events—did not

6    discriminate against him.  Accordingly, the Court grants summary judgment as to

7    Plaintiff's discrimination claim arising from Mr. Wilkins marking him as AWOL.

8                  **4.**        **Constructive Termination**

9         Plaintiff further alleges that he was constructively terminated in violation of

10   Title VII on November 25, 2018.  (ECF No. 8, at 3, 5, 13.)  To establish constructive

11   discharge, a plaintiff must "must show working conditions so intolerable that a

12   reasonable person would have felt compelled to resign." *Pennsylvania State Police*

13   *v. Suders*, 542 U.S. 129, 147 (2004).  However, "[w]here a plaintiff fails to

14   demonstrate the severe or pervasive harassment necessary to support a hostile work

15   environment claim, it will be impossible for her to meet the higher standard of

16   constructive discharge[.]" *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.

17   2000).  As explained below, Plaintiff cannot establish a triable issue as to his hostile

18   work environment claim.  As such, the Court grants Defendant summary judgment

19   as to his constructive termination claim.

20        Because (1) Plaintiff failed to administratively exhaust many of his claims,

21   (2) Defendant has shown that it had a legitimate, nondiscriminatory reason for each

22   of the actions underlying Plaintiff's remaining claims, and (3) Plaintiff failed to

23

24       _____

25    on October 1, 2018, when Plaintiff claims he felt sick and requested to leave work
early. There is no evidence that Plaintiff had a doctor's note on October 1, 2018;

26   rather, it was not until approximately two weeks later, on October 16, 2018, that
Plaintiff visited his doctor, who provided Plaintiff with a note placing him off work."

27   (ECF No. 29, at 8 (citing Pl. Depo. at 135:4-11, 135:16-18, 135:24-136:7, 244:2-14,

28   Wilkins Decl. ¶ 30).)

provide sufficient evidence to overcome the strong inference of non-discrimination by demonstrating Defendant's reasons were pretextual, the Court grants summary judgment as to Plaintiff's race discrimination claims under Title VII.

### C.   Title VII Hostile Work Environment Claim

Title VII can support a cause of action based upon the creation of a racially hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  In assessing whether conduct is sufficiently hostile to constitute a hostile work environment, a court must analyze "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998) (quotations omitted). Further, "[t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).  Finally, "plaintiff must show that the work environment was both subjectively and objectively hostile." *Reynaga v. Rosburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017).

Plaintiff alleges that the VA created a racially hostile work environment in violation of Title VII.[7]  (ECF No. 8, at 9–10.)  Defendant argues that it is entitled to summary judgment because Plaintiff's "claims do not rise to the level of severity or

---

[7] Plaintiff also withdraws his hostile work environment claim based on sex. (ECF No. 28, at 3–4.)  Defendant argues that the Court should dismiss this claim as well. (ECF No. 29, at 5.)  As Defendant does not oppose dismissal, the Court construes Plaintiff's withdrawal as a request for voluntary dismissal and dismisses the claim.

1  pervasiveness required to constitute actionable harassment." (ECF No. 27, at 22.)
2  The Court agrees with Defendant.

3  Plaintiff's opposition does not cite a single incident in which anyone at the
4  VA made a comment about his race. (*See generally* ECF No. 28.) While the Court
5  is not obligated to scour the record for evidence on Plaintiff's behalf, *see Forsberg*,
6  840 F.2d at 1418, it was unable to locate *any* harassment in the record, much less
7  harassment of a racial nature, in conducting its general review of the available
8  documents and testimony. Indeed, Plaintiff admits that his direct supervisor never
9  made any race-related comments to him or anyone at the VA. (Pl. Depo 126:16–
10  24.) Instead, Plaintiff points to three incidents as examples of harassment. However,
11  none of these actions rises to the level of seriousness required to sustain a finding of
12  a hostile work environment.

13  First, Plaintiff argues that an incident in which a co-worker, Evangeline
14  Howard, commented that he "needs to learn to play in the sandbox or he would be
15  burned" contributes to a finding of unlawful workplace harassment. (ECF No. 28,
16  at 7 (citing Declaration of Evangeline Howard ¶¶ 14–15); *see also* Pl. Depo. 122:20–
17  124:22.) However, Plaintiff admits that he understood that Ms. Howard's comments
18  were not intended to be threatening. (Pl. Depo. 155:3–16.) Furthermore, nothing in
19  the record indicates that Ms. Howard's comments were racially motivated. Because
20  Ms. Howard's comment was neither subjectively harassing nor racial in nature, it
21  does not contribute to a finding that the VA created a racially hostile work
22  environment.

23  Second, Plaintiff argues that Ms. Concepcion engaged in harassment by
24  restricting his access to VA files while he was away on medical leave. (ECF No.
25  28, at 7.) Again, nothing about this action was racial in nature—nor does Plaintiff
26  point to anything in the record that could convince a rational trier of fact that it was
27  racially motivated. (*See* ECF No. 28, at 7.) Defendant, by contrast, presented the
28  Court with citations to evidence in the record showing that Plaintiff's file access was

1    revoked because he was on medical leave and should not have been accessing the
2    files for work during that time, and that access was reinstated immediately upon his
3    return to work.  (ECF No. 29, at 10 (citing Concepcion Decl. ¶ 43; Pl. Depo. 129:2–
4    10).)

5        Third, Plaintiff cites the police report Wilkins filed regarding the missing
6    chair as a final example of racially harassing behavior.  (ECF No. 28, at 7–8 (citing
7    Jackson Depo. 34:21–35:7).)  The Court has already addressed this issue.  Defendant
8    provided a legitimate, non-discriminatory reason for its actions—an employee
9    reported the chair missing—and Plaintiff failed to show this reason was pretextual.

10       These three events, when taken together and evaluated in the light most
11   favorable to Plaintiff, do not create a triable issue.  As such, the Court grants
12   Defendant summary judgment regarding Plaintiff's hostile work environment claim.

13       **D.    Title VII Retaliation Claim**

14       Plaintiff alleges that Defendant retaliated against him "for his past EEO
15   activity."  (ECF No. 8, at 5, 7–11.)  Defendant moves for summary judgment on this
16   claim, arguing that the undisputed record shows Plaintiff's Title VII retaliation claim
17   fails as a matter of law.  (ECF No 27, at 27.)

18       Title VII prohibits an employer "from retaliating against an applicant for
19   employment because the applicant has opposed any unlawful employment practice,
20   or has made a charge, testified, assisted, or participated in an employment
21   discrimination investigation or proceeding."  *Lyons*, 307 F.3d at 1103 (quoting *Lam*
22   *v. Univ. of Hawai'i*, 40 F.3d 1551, 1558–59 (9th Cir. 1994)); *see* 42 U.S.C. § 2000e–
23   3(a).

24       The *McDonnell Douglas* framework also applies to Title VII retaliation
25   claims.  *Surrell v. California Water Serv., Co*., 518 F.3d 1097, 1105–06 (9th Cir.
26   2008).  To establish a prima facie case of retaliation, the plaintiff must show that:
27   (1) she engaged in a protected activity, (2) she was subjected to an adverse
28   employment decision, and (3) that a causal link exists between plaintiff's activity

and the employment decision.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).  If established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions, after which the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation.  *Id.*; *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).

Even if Plaintiff were able to make out a prima facie case for retaliation, his claim would fail.[8]  As explained above, Defendant has articulated non-retaliatory reasons for the actions underlying Plaintiff's claim.  *See supra* Sections III.B.1–3. Plaintiff has failed to show those reasons were pretextual.  Therefore, Defendant is entitled to summary judgment as to Plaintiff's Title VII retaliation claim.

### E.    Rehabilitation Act Claims

Plaintiff's Amended Complaint alleges violations of the Rehabilitation Act for discrimination, retaliation, and the creation of a hostile work environment on the basis of disability that mirror the Title VII claims evaluated above.[9]  (ECF No. 8, at 6–8, 10–11.)  Defendant argues that it prevails on each of these claims based on the record and the briefing.[10]  (ECF No. 27, at 28; ECF No. 29, at 5, 9–10.)

---

[8] Plaintiff's brief in opposition fails to present any argument against summary judgment on this claim.  (*See generally* ECF No. 28.)  "When a non-moving party opposes summary judgment with respect to some claims, but not others, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."  *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) (internal quotation omitted); *see also Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (upholding finding that the non-moving party abandoned claims by not raising them in opposition to a motion for summary judgment).  Because the claim is abandoned rather than withdrawn, the Court declines to dismiss the claim and instead evaluates whether Defendant is entitled to summary judgment on the record presented.

[9] Plaintiff claims that he suffers from a permanent cervical spine injury.  (Pl. Depo. 185:8–16; EEO Affidavit ¶¶ 33–38.)

[10] Plaintiff also fails to marshal any argument against summary judgment on his disability discrimination claim.  (*See generally* ECF No. 28.)  The Court also

– 19 –

Courts apply *McDonnell Douglas* burden shifting analysis to disability discrimination claims. *See Raytheon v. Hernandez*, 540 U.S. 44, 49–54 (2003); *see also Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). First, Plaintiff must make out a prima facie case of disability discrimination or retaliation. *Brooks v. Capistrano Unified Sch. Dist.*, 1 F.Supp.3d 1029, 1036 (C.D. Cal. 2014). Then, if Plaintiff is able to do so, Defendant must articulate a non-discriminatory or non-retaliatory reason for its action. *Id.* at 1038. Finally, if Defendant puts forth a legitimate reason for its actions, Plaintiff must establish that these reasons were pretextual. *Id.*

Here, like in the Title VII context, even if Plaintiff were able to make out a prima facie case, his claim would fail because Defendant has articulated legitimate, non-discriminatory, and non-retaliatory reasons for each allegedly discriminatory employment action. *See supra* Sections III.B.1–3. In response, Plaintiff conclusorily asserts that he "believes there is just as much evidence that these actions could have been taken due to his requests for accommodation." (ECF No. 28, at 6.)

However, "[i]t is well-settled that reliance on mere speculation, conjecture, or fantasy cannot defeat a motion for summary judgment." *Hawn v. Executive Jet Management, Inc.*, 546 F.Supp.2d 703, 715 (D. Ariz. 2008) (internal quotation omitted); *see also Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Because Defendant provided non-discriminatory, non-retaliatory reasons for its actions and Plaintiff only presents "allegation and speculation" that those reasons are pretextual, Plaintiff's claim fails as a matter of law. Defendant is therefore entitled to summary judgment on Plaintiff's discrimination and retaliation claims arising under the Rehabilitation Act.

Similarly, as shown above, Plaintiff has failed to show that the record could support a claim that the VA created a hostile work environment. *See supra* Section

_____

construes this as abandonment of the claim. *See supra* note 9.

1  III.C.  Accordingly, the Court also grants summary judgment as to Plaintiff's hostile

2  work environment claim arising under the Rehabilitation Act.

3      **F.**    **Failure to Accommodate Claim**

4      Plaintiff alleges Defendant violated the Rehabilitation Act by failing to

5  accommodate his disability.  (ECF No. 8, at 8–9.)  Defendant moves for summary

6  judgment on this claim, arguing that the record shows the VA met its obligations

7  under the Rehabilitation Act.  (ECF No. 27, at 28–31; ECF No. 29, at 10–11.)

8      The Rehabilitation Act forbids federal employers from discriminating against

9  or excluding employees from the benefits of employment because of their disability

10  and directs executive agencies to promulgate regulations necessary to carry out this

11  prohibition.  *See* 29 U.S.C. § 794(a).  The Rehabilitation Act also expressly adopts

12  the Americans with Disabilities Act ("ADA")'s standards for determining whether

13  such discrimination has occurred.  *Id.* at § 794(d).  The ADA requires employers to

14  make "reasonable accommodations to the known physical or mental limitations of

15  an otherwise qualified individual with a disability who is an applicant or employee,

16  unless such covered entity can demonstrate that the accommodation would impose

17  an undue hardship on the operation of the business of such covered entity."  42

18  U.S.C. § 12112(b)(5)(a); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,

19  1089 (9th Cir. 2002).

20      Once an employee requests an accommodation, an employer must engage in

21  an interactive process with the employee to determine the appropriate reasonable

22  accommodation.  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en

23  banc), *vacated on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

24  "Liability for failure to provide reasonable accommodations ensues only where the

25  employer bears responsibility for the breakdown in the interactive process."

26  *Zivkovic*, 302 F.3d at 1089 (internal quotation omitted).  "An employer is not

27  obligated to provide an employee the accommodation he requests or prefers, the

28  employer need only provide some reasonable accommodation."  *Id.*  Reasonable

accommodation must be "effective[ ] in enabling the employee to perform the duties of the position." *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001); *see also* 29 C.F.R § 1630.2(o)(1)(ii)–(iii) (defining reasonable accommodation as "[m]odifications or adjustments . . . that enable an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal privileges of employment").

Here, it is undisputed that Plaintiff was granted an ergonomic review upon arrival at the VA, and that he was given a sit-stand desk, an ergonomic chair, and an ergonomic keyboard and mouse as accommodations. (Pl. Depo. 199:12–15, 203:17–20, 207:18–23.) It is also undisputed that Plaintiff requested a different type of sit-stand desk than he was initially given—Plaintiff's desk was manual, but he wanted an electronic lift stand desk. (Pl. Depo. 199:16–25.) Further, it is undisputed that Plaintiff was able to perform the duties of his job without restrictions. (Pl. Depo. 187:19–21, 188:10–15; EEO Affidavit ¶¶ 42–44.) However, Plaintiff testified that the desk to which he was assigned did not adjust to the proper height. (Pl. Depo. 200:14–23.) Plaintiff provides the Court with testimony from Vivian Jackson in which she claims to recall discussions between Plaintiff and Wilkins about Plaintiff's standing desk being "really small" and Plaintiff asking "to be moved to a bigger desk."[11] (Jackson Depo. 22:4–8, 22:21–24, 24:2–15.) However, the record indicates that the nature of Plaintiff's complaints to Mr. Wilkins about the size of his desk were related to his desire for a larger desk with more storage space and were "completely unrelated to any alleged disability or request for reasonable accommodation." (Wilkins Decl. ¶ 12; *see also* Michel Decl. ¶ 13.) The parties also agree that Mr. Wilkins was not Plaintiff's direct supervisor. (Wilkins Decl. ¶¶ 5, 11;

---

[11] Defendant argues that Ms. Jackson's testimony is inadmissible hearsay. (ECF No. 29, at 11.) Ms. Jackson's testimony is not hearsay because it is not offered to show the truth of the matter asserted—i.e. that Plaintiff's desk was too small. Rather, it is admissible to show that Plaintiff put Mr. Wilkins on notice that he believed his desk was too small and that he requested a bigger desk.

EEO Affidavit ¶ 10.)  Finally, it is undisputed that the VA conducted an ergonomic reassessment of Plaintiff on October 5, 2018, approximately one week after he first contacted his direct supervisor Carmen Concepcion claiming the desk he received after his initial ergonomic review did not fully accommodate his needs on September 27, 2018. (Concepcion Decl. ¶¶ 31, 33–34; Pl. Depo. 210:2–9, 221:1–11; Declaration of Rene Michel ¶¶ 17–18; Ex. 15 & 17 to Def. NOL.)  Less than two weeks after this reassessment, Plaintiff went on an extended leave during which he resigned his position. (Pl. Depo. 29:18–21, 38:16–25, 135:24–136:7, 137:14–138:3; Notification of Personnel Action, Ex. 19 to Def. NOL.)

Plaintiff argues there is dispute of material fact regarding when Mr. Wilkins learned that Plaintiff believed his desk was ineffective.  (ECF No. 28, at 9.) However, Plaintiff fails to point to any evidence that indicates Mr. Wilkins had any responsibility or authority over the reasonable accommodation process at the VA. Nor is there any evidence that Wilkins understood Plaintiff's complaints about his desk to be related to any disability or need for reasonable accommodation.  Further, it is undisputed that that Plaintiff did not request a reassessment of his ergonomic needs until his September 27, 2018 email to Ms. Concepcion, at which point he was promptly given a reassessment.

Because Plaintiff is unable to point the court to any dispute of material fact or make out a prima facie claim of failure to accommodate, Defendant is entitled to summary judgment on this claim.

## IV.
## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's claims for race discrimination, the creation of a racially hostile work environment, and retaliation under Title VII, as well as each claim arising under the Rehabilitation Act. The Court also dismisses Plaintiff's causes of

1    action for discrimination and the creation of a hostile work environment based on

2    sex.  The Clerk of Court shall enter judgment accordingly.

3         **IT IS SO ORDERED.**

4

5    Dated:  May 12, 2021

6                                              Hon. Dana M. Sabraw
                                               United States Chief District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28